David R. Simon (SBN 145197)
**SIMON LAW GROUP**
17595 Harvard Avenue, Suite C515
Irvine, CA 92614
Ph. (714) 975-1728

Bryan W. Pease (SBN 239139)
**LAW OFFICE OF BRYAN W. PEASE**
3170 Fourth Ave., Suite 250
San Diego, CA 92103
Ph. (619) 723-0369

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED POULTRY CONCERNS, a Maryland nonprofit corporation,<br><br>**Plaintiff,**<br><br>vs.<br><br>CHABAD OF IRVINE, a California corporation; ALTER TENENBAUM, an individual; and DOES 1 through 50,<br><br>**Defendants**. | CASE NO.<br><br>**VERIFIED COMPLAINT FOR:**<br><br>**ILLEGAL BUSINESS PRACTICES IN VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**<br>**[Bus. & Prof. §§ 17200 et seq.]**<br><br>**TEMPORARY RESTRAINING ORDER REQUESTED PRIOR TO OCTOBER 10, 2016** |

Plaintiff UNITED POULTRY CONCERNS, on behalf of itself and the general public, alleges as follows against Defendants CHABAD OF IRVINE, ALTER TENENBAUM, and DOES 1 through 50, inclusive (collectively "Defendants"):

# INTRODUCTION

1. Plaintiff brings this private attorney general action under California Business and Professions Code § 17200 (the "Unfair Competition Law" or "UCL"). Plaintiff seeks an injunction to require compliance with California Penal Code ("PC") section 597(a), which prohibits intentional killing of an animal and does not contain an exception for religious sacrifice. Defendants engage in business practices for profit in which they charge a fee to kill and discard animals in direct violation of PC 597(a).

# PARTIES

2. Plaintiff UNITED POULTRY CONCERNS ("UPC") is a non-profit corporation duly formed and validly existing under the laws of Maryland. UPC's mission is to encourage respect for chickens and other domestic fowl.

3. Defendant CHABAD OF IRVINE ("CHABAD") is a California corporation with its main place of business in Orange County, California.

4. Defendant ALTER TENENBAUM ("TENENBAUM") describes himself as the "spiritual leader" of Defendant CHABAD and directs the ritual killing of chickens. On information or belief, TENENBAUM profits personally from charging a fee for killing and disposing of the chickens.

5. Plaintiffs do not know the true names and capacities of the defendants named in this action as DOES 1-50, and therefore, sue them under fictitious names. Plaintiffs will request permission to amend this complaint, or substitute the Doe Defendants via a court-approved form, to state the true names and capacities of these fictitiously named Defendants when they ascertain them. Plaintiffs allege that these fictitiously named Defendants are legally responsible in some manner for the acts set forth below, and accordingly, are liable for the relief requested.

# JURISDICTION AND VENUE

6. This Court has personal jurisdiction over each of the Defendants because each either is domiciled in, or is authorized or registered to conduct, or in fact does conduct, substantial business in the Central District.

7. This Court has federal diversity jurisdiction over the claims asserted herein because the cost to Defendants of the injunction sought would exceed $75,000 over the course of about ten years. This figure is calculated based on approximately 300 chickens killed per year, at a profit of about $25 per chicken, or $7,500 per year.

8. As a separate and independent basis for diversity jurisdiction, the attorneys' fees incurred by Plaintiff, which Defendant will ultimately be liable for under Code of Civil Procedure section 1021.5 if Plaintiff prevails, have exceeded $75,000 as of the time of the filing of this complaint.

9. A California court would have subject matter jurisdiction over the claims asserted because relief is sought under California Business and Professions Code sections 17200, *et seq.*

10. A separate and independent basis for federal subject matter jurisdiction is that this case requires resolution of a substantial question of federal law under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* (2005) 545 U.S. 308. Defendants contend their actions are protected by the Free Exercise clause of the First Amendment under *Church of the Lukumi Babalu Aye, Inc. v. Hialeah* (1993) 508 U.S. 520 ("*Lukumi*.") However, Plaintiff contends *Lukumi* allows neutral laws of general applicability to apply to all conduct, including conduct motivated by religious beliefs. Plaintiff further contends that Defendants' undisputed conduct violates California Penal Code section 597(a) on its face. A federal court is best equipped to deal with the substantial question of federal law of whether the Court should create an exception to the PC 597(a) based on the Free Exercise Clause of the First Amendment.

11. Venue is proper in this county because the acts and omissions upon which this action is based occurred in this county.

## STATUTORY FRAMEWORK

12. California's Unfair Competition Law ("UCL"), Business & Professions Code ("BPC") section 17200, *et seq.*, prohibits businesses from engaging in unlawful, fraudulent, or unfair business practices. For purposes of the UCL, a non-profit

organization, including a religious one, can engage in "business practices" if money is exchanged for goods and/or services.

13. An action based on Section 17200 to redress an unlawful business practice borrows violations of other laws and treats them as a violation of Section 17200. In other words, a business practice is "unlawful" under Section 17200 when it violates another federal, state or local law, whether or not the other law contains a private right of action.

14. California Business and Professions Code §§ 17203 and 17204 allow private parties who have lost money or property as a result of Defendants' unlawful business practices to ask a court to enjoin such practices.

## STATEMENT OF FACTS

15. Routinely in the fall of each year, Defendants order and receive at their property truckloads of chickens crammed in tiny crates and charge people a fee of approximately $27 to kill and dispose of each chicken.

16. On information or belief, the cost of each chicken is under $2, and thus the profit to Defendants is approximately $25 per chicken killed and disposed of.

17. Defendants have admitted the chickens are not used for food, and Defendants are not conducting their activities at a USDA licensed slaughterhouse, which would be required to use the chickens for food.

18. California Penal Code Section 597(a) prohibits any "intentional and malicious" killing of an animal. PC 599c provides exceptions for killing dangerous animals and using animals for food, hunting, or medical research at a licensed facility.

19. Defendants' conduct described herein is malicious as that term is defined in California Penal Code section 7, in that Defendants have "an intent to do a wrongful act, established either by proof or presumption of law."

20. The Legislature did not see fit to include an exception to PC 597(a) for conduct motivated by religion, and there is no such exception. However, Defendants believe they are above the law and can conduct themselves as they wish because of their religious beliefs.

21. PC 597(a) was enacted to prohibit *exactly* the type of conduct that Defendants here are engaged in, that is, the deliberate killing of an animal not known to be dangerous, for a purpose other than food, hunting or medical research.

22. Defendants' stated purpose in carrying out the killing described herein is to allow people to transfer their sins to the animal, and then kill the animal for their sins. Such conduct is clearly illegal under PC 597(a). Engaging in such conduct under the guise of religion does not alter the illegality of the conduct. In fact, taking out vengeance on an innocent animal for one's own shortcomings is exactly the type of societal evil the legislature sought to prohibit in enacting this provision. Defendants are not entitled to rewrite the laws of California, and determine for themselves what is legal and moral conduct, when the Legislature has found that this exact conduct is illegal and punishable as a misdemeanor or a felony.

23. Defendants engage in the above practices for profit, meaning they generate positive cash flow and retain the proceeds.

24. Ronnie Kudlow Steinau ("STEINAU") has been an employee of Plaintiff for over 10 years, since September 1, 2006.

25. When Plaintiff learned of Defendants' illegal activities described herein, STEINAU's time working for Plaintiff was diverted to investigating and exposing these acts, and attempting to convince authorities to take action.

26. STEINAU called Defendant CHABAD OF IRVINE before the October 2014 Kapparot events and asked how she could participate in one of the events. An agent of CHABAD OF IRVINE told STEINAU that she could pay at the door and that the price was approximately $27 per chicken. The agent specifically told STEINAU she could not have a chicken killed for her without paying the fee.

27. On October 1, 2014, Defendants held a Kapparot event at 5010 Barranca Parkway, Irvine, CA 92604 at which Defendants charged participants a fee for killing a chicken that participants first swung in the air.

28. At this event held by Defendants, there were birds crammed in cages so tightly they did not have room to spread their wings or move around, six to seven birds each crammed into small cages barely large enough to hold them, several cages stacked on top of each other and left in the hot sun for hours with no water, and a foul and offensive odor was emanating from the cages.

29. Agents of Defendant roughly removed and handled these birds, holding them by the necks and wings, walking around while holding chickens upside down by their feet, holding chickens with their wings held behind them, birds stacked in cages on top of one another, defecating on the cages and birds beneath them, and birds with fecal matter on their bodies and feathers. Agents of Defendant who were handling the birds would often walk around talking while holding the birds by their wings, treating the birds as if they were inanimate objects and handling them very roughly.

30. Defendants and/or their agents conducted the killing in a small patio area and tossed dead birds into trash cans. Participants swung the birds around over their heads and then an agent of Defendants would take the birds and slit their throats. The screams of the birds being slaughtered lasted for hours.

31. STEINAU was present at the October 1, 2014 event and called Orange County Animal Care from the event to seek enforcement action. However, on information or belief, no such enforcement action was taken.

32. On or about September 10, 2015, STEINAU called Defendant CHABAD OF IRVINE at 949-786-5000 and spoke with an individual who would neither confirm nor deny whether the Kapparot event was taking place that year. The agent said she would not give out information because STEINAU was not on the "member" list, and that the police said she does not have to answer questions from anyone. STEINAU also called on or about September 17, 2015 and received the same response.

33. On information or belief, Defendants will again be illegally killing and disposing of chickens for a fee beginning on the weekend of October 8, 2016.

## FIRST CAUSE OF ACTION

### (Illegal Business Practices in Violation of the Unfair Competition Law, BPC §§ 17200 et seq.)

34. Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

35. Defendants have engaged in acts or practices that constitute unfair competition, as that term is defined in section 17200 *et seq.* of the California Business & Professions Code.

36. Defendants have violated, are violating, and plan to violate Business & Professions Code sections 17200 *et seq.* through their unlawful business acts and practices, which violate California Penal Code section 597(a).

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants as follows:

**ON ALL CAUSES OF ACTION**

1. For preliminary and permanent injunctions enjoining Defendants and their principals, members, agents, officers, employees, representatives, co-conspirators, and all person acting in concert, collaboration or participation with them during the pendency of this action and permanently thereafter, from killing any chicken or other animal for, or on behalf of, another person, for compensation or donation, for any reason not enumerated in California Penal Code section 599c;

2. For declaratory relief declaring that Defendants' killing of chickens for religious purposes when not using the chickens for food is not permitted under any provision the California Penal Code and is specifically banned by PC 597(a);

3. For attorneys' fees as provided by, *inter alia,* Code Civ. Proc. § 1021.5, and for costs of suit incurred herein.

4. For pre- and post-judgment interest.

5. For such other and further relief as the Court deems just and proper.

Dated: September 28, 2016     By:     **SIMON LAW GROUP**
**LAW OFFICE OF BRYAN W. PEASE**

_____
Bryan W. Pease
Attorneys for Plaintiff
UNITED POULTRY CONCERNS

## VERIFICATION

I, Ronnie Kudlow Steinau, am an employee of Plaintiff United Poultry Concerns. I have read the foregoing complaint and am familiar with its contents, which I declare under penalty of perjury of the laws of the State of California are all true and correct.

Dated: September 28, 2016

By: _____
Ronnie Kudlow Steinau