David R. Simon (SBN 145197)
**SIMON LAW GROUP**
17595 Harvard Avenue, Suite C515
Irvine, CA 92614
Ph. (714) 975-1728

Bryan W. Pease (SBN 239139)
**LAW OFFICE OF BRYAN W. PEASE**
3170 Fourth Ave., Suite 250
San Diego, CA 92103
Ph. (619) 723-0369

Attorneys for Plaintiff
UNITED POULTRY CONCERNS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED POULTRY CONCERNS, a Maryland nonprofit corporation,<br><br>**Plaintiff,**<br>vs.<br><br>CHABAD OF IRVINE, a California corporation; ALTER TENENBAUM, an individual; and DOES 1 through 50,<br><br>**Defendants**. | **CASE NO. 8:16-cv-01810**<br><br>**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**TEMPORARY RESTRAINING ORDER REQUESTED PRIOR TO OCTOBER 10, 2016** |

TO THE COURT AND ALL PARTIES:

　　Plaintiff hereby seeks a temporary restraining order to enjoin Defendants from killing chickens or other animals in ritual animal sacrifice in exchange for a fee or donation, when the animals are not being used for food, until this matter can be heard on

regular notice.

This application is based on the below memorandum of points and authorities, declarations of Cheryl Bernstein; Ed Boks; Holly Cheever, DVM; Karen Davis, Ph.D.; Armaiti May, DVM; Jill Mulato; and Debra Voulgaris, DVM; and proposed order filed and served herewith.

Defendants' counsel is as follows:

Leslie Keith Kaufman (Bar # 109335)
Kaufman & Kaufman
1001 North Ross Street
Santa Ana, CA 92701-3315
Tel.: 714-550-9305
Email: kaufman_kaporos@yahoo.com

Plaintiff has emailed defense counsel this *ex parte* application, supporting declarations and proposed order prior to filing them, along with a copy of the complaint. Plaintiff's counsel have been communicating regularly with defense counsel through email and serving and receiving legal documents in this manner, for a separate state court action concerning the same activities of Defendants, *Animal Protection and Rescue League v. Chabad of Irvine*, Orange County Superior Court case number 30-2015-00809469-CU-BT ("*APRL*.") Defense counsel has never spoken on the phone or returned a phone call to Plaintiff's counsel and insists on communicating only in writing.

The plaintiff in *APRL* is seeking to enforce a number of animal cruelty, environmental and public sanitation laws against Defendants, based on Defendants' illegally confining chickens crammed in cages in the hot sun for several hours without water without room to move, roughly handling them, and polluting the area with noise and blood. However, the issue of the religiously motivated killing itself being a direct violation of California Penal Code ("PC") section 597(a), which prohibits "maliciously and intentionally" killing an animal, has not been raised in *APRL*.

Plaintiff brought a state case similar to *APRL* in Los Angeles Superior Court that was dismissed earlier this year in part because Plaintiff was found not to have expended resources specifically as to those defendants for UCL standing. (*United Poultry Concerns v. Bait Aaron, Inc., et al.*, LASC case number BC592712 ("*Bait Aaron.*") However, Defendants in the present case were not defendants in *Bait Aaron* and there is no *res judicata* or other issue preclusion with respect to the present case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff seeks an injunction under California's Unfair Competition Law ("UCL"), Business and Professions Code ("BPC") section 17200, et seq., to enjoin Defendants from violating California Penal Code ("PC") section 597(a), which prohibits "maliciously and intentionally" killing any animal, subject to specified exceptions in PC 599c.

Article III standing is invoked under diversity jurisdiction as well as federal question jurisdiction, because the question of whether the Court should read a religious exception into PC 597(a) that has not been provided by the Legislature requires resolution of a substantial question of federal law.

Because the Legislature has not created a religious exception for PC 597(a), and no court has ever read such an exception into a neutral animal cruelty law of general applicability, this Court should decline to do so as well and should instead grant injunctive relief requiring Defendants to comply with PC 597(a) and cease killing chickens that are not being used for food.

The Legislature, and not independent actors, determine what is legal and moral behavior in the State of California. Except when done for food or in connection with hunting, investigating, laboratory testing, or killing dangerous animals, none of which is the case here, the intentional killing of healthy, non-threatening animals is illegal regardless of religious or other motivation.

## II.  LEGAL PRINCIPLES

### A.  The Unfair Competition Law

The UCL prohibits "unfair competition," defined as "any unlawful, unfair, or fraudulent, business practice." (BPC §17200.) The UCL applies to any "person," including natural persons, corporations, and non-profits. (BPC §17201; *Pines v. Tomson* (1984) 160 Cal.App.3d 370, 386.) Courts have broadly interpreted the term "business practice," generally finding the UCL to apply to virtually any conduct with any pecuniary element. (*See, e.g., People v. McKale* (1979) 25 Cal.3d 626, 632 ("California courts have consistently interpreted such language broadly. An 'unlawful business activity' includes " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " [Citation.] The Legislature 'intended … to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.' [Citation.]").)

A business practice is unlawful for purposes of the UCL if it violates *any* federal, state or local law. (*AICCO, Inc. v. Ins. Co. of N. Am*. (2001) 90 Cal.App.4th 579, 587 ("When determining whether a practice is 'unlawful,' section 17200 'borrows' violations of other laws, and makes them independently actionable under the UCL. [Citation.] Virtually any law – federal, state or local – can serve as a predicate for a section 17200 claim. [Citation.]").) Under the UCL, private parties who have lost money or property can ask a court to enjoin unlawful business practices. (BPC §§ 17203, 17204.)

*Animal Legal Defense Fund v. Great Bull Run* (June 6, 2014), Case No. 14-cv001171-MEJ, 2014 WL 2568685, 2014 U.S. Dist. LEXIS 78367, directly addressed the issue of obtaining an injunction under the UCL for violation of PC 597, and specifically an argument that was raised that *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136 held PC 597 does not itself contain a private right of action:

> Because the *Mendes* court held that the animal cruelty law contained no private right of action, but did not bar civil causes of action that invoke the animal cruelty law, the Court finds Defendants' argument unpersuasive. Further, the UCL provides for **a private right of action against any unlawful business practice,**

> **including violations of laws for which there is no direct private action.** *VP Racing Fuels, Inc. v. Gen. Petrol. Corp.*, 673 F. Supp. 2d 1073, 1082 (E.D. Cal. 2009) (citing *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918 (C.D. Cal. 1996)) ("[I]t is not necessary that the predicate law provide for private civil enforcement."); *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

(Emphasis added.)

### B.   Standing

A plaintiff has standing under the UCL if it "suffered both 'injury in fact' and 'a loss of money or property caused by unfair competition.'" (*Peterson v. Cellco P'ship* (2008) 164 Cal.App.4th 1583, 1590.) Addressing first the latter requirement, loss of money or property, this can be shown many ways:

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

(*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323.) It is not necessary that plaintiff lose money or property in a transaction with defendant; rather, it is sufficient that defendant's conduct cause plaintiff to lose money or property in a transaction with a third party. (*Id.* at p.337 ("[W]e hold ineligibility for restitution is not a basis for denying standing under section 17204 and disapprove those cases that have concluded otherwise.")) In one recent case, a court found that where the defendants' conduct allegedly caused the plaintiff to incur expenses to buy video equipment, the plaintiff had a basis to assert standing under the UCL and there was a triable issue of fact as to whether her expenditure was the result of the defendants' conduct. (*Campbell v. Feld Entm't, Inc*. (N.D. Cal. 2014) 75 F.Supp.3d 1193.)

As to the injury in fact requirement, this is less restrictive than the economic injury requirement and is generally met if the plaintiff lost money or property. (*Kwikset Corp.,*

*supra,* 51 Cal.4th at p.323 ("Notably, lost money or property – economic injury – is itself a classic form of injury in fact."). )

In two recent cases that are directly on point, courts held that animal rights organizations have standing to sue under the UCL where a defendant's illegal activity thwarts the organization's mission or causes it to expend resources to combat the activity. In *Animal Legal Def. Fund v. LT Napa Partners LLC* (2015) 234 Cal.App.4th 1270 ("*Napa Partners*") the appellate court found the Animal Legal Defense Fund ("ALDF") had standing to sue a restaurant for selling *foie gras* in violation of state law:

> [D]efendants' alleged violations of the statute tended to frustrate plaintiff's advocacy for an *effective* ban on the sale of foie gras in California, and tended to impede plaintiff's ability to shift its focus on advocacy efforts in, for example, other states and at the federal level.

(*Id.* at p.1282.) And in *Animal Legal Def. Fund v. Great Bull Run, LLC* No. 14-CV-01171-MEJ, 2014 WL 2568685 (N.D. Cal. June 6, 2014) ("*Great Bull Run*"), the court held that ALDF and another group had standing to sue an illegal bull run, noting that "Organizational plaintiffs have standing under the UCL where they divert resources as a result of a defendant's alleged unlawful business practices." (*Id.* at p.6.)

Here, just as in *Napa Partners* and *Great Bull Run*, Defendants' illegal acts have thwarted Plaintiff's mission and caused Plaintiff to expend resources as alleged in the verified complaint. Accordingly, Plaintiff has standing to sue under the UCL.

### III. STATEMENT OF FACTS

As described in the attached declarations, On October 1, 2014, witnesses were present at the Kapparot event held by Defendants in this case, at which Defendants charged participants a fee and, in exchange, Defendants and/or their agents swung a chicken in the air and then killed the chicken for each participant. Witnesses saw that Defendants or their agents had crammed birds in cages so tightly they did not have room to spread their wings or move around, saw that neither Defendants nor their agents gave

any birds any food or water, saw Defendants roughly handle birds and hold them by the necks and wings, saw Defendants or their agents roughly pulling chickens from cages, saw Defendants or their agents walking around while holding chickens upside down by their feet, and saw that Defendants or their agents routinely left dead birds in cages surrounded by live birds.In 2015, all indications were that Defendants again conducted the chicken killing, but they were very secretive about the location, and witnesses were not able to document it. This sickening spectacle is scheduled to be repeated again beginning on the weekend of October 8, 2016. However, killing chickens is not required for Kapparot to take place, but is simply a preference. Many other entities have stopped killing chickens and instead perform the ceremony by swinging small bags of coins overhead. For instance, Haichal Moshe recently sent a letter to participants stating, "Due to new circumstances, Haichal Moshe in Encino will not be able to do Kapparot with live animals. It will be done with tzedekah (money), as explained in Shulchan Aruch-Siman 605. Please send your names and donations to Haichal Moshe. All contributions are tax deductible." (Declaration of Bryan Pease, Ex. A.)

Even if Defendants' religion *did* require them to kill chickens for Kapparot, this would not exempt them from PC 597(a). As numerous expert witnesses have testified in the declarations filed and served herewith, including veterinarians and a former head animal cruelty enforcement agent for the City of Los Angeles and other cities and counties nationwide, the activity in which Defendants engage is illegal on its face. The Court would need to read an exception into the statute for religion that the Legislature did not see fit to provide, in order to exempt such practices. Yet, no court in the United States has ever read such an exception into a neutral animal cruelty law of general applicability that Plaintiff is aware of.

The point of noting that Defendants' religion does not actually require them to kill and dispose of chickens is to show that on balance for issuing a TRO, the relative harm to Defendants in enjoining this conduct is minimal. The only real harm to Defendants would be economic, in that they would lose the larger amount of money people pay to have a

chicken killed rather than donating a bag of coins, which might contain less than the $25 profit per chicken that Defendants reap. Plaintiff is willing to post a bond of $7,500 to indemnify Defendants for this lost profit for this year if the TRO is granted and later determined to be without merit.

Accordingly, granting the TRO requested by Plaintiff would not stop Defendants from exercising their religion, but would simply prohibit an unlawful business practice that is a controversial and completely optional (albeit more lucrative) method of carrying out the Kapparot ritual.

## IV. ARGUMENT

### A. Defendants Are Violating the Unfair Competition Law ("UCL")

Because Defendants routinely charge material amounts of money to conduct the Kapparot ritual, they are clearly engaged in a "business practice" within the meaning of the UCL. (*See McKale, supra,* 25 Cal.3d at p.632.) Further, all Defendants are "persons" and are therefore subject to the UCL. Accordingly, Defendants are subject to, and violate, the UCL when they use chickens in Kapparot.

Although Defendants may be a non-profit organization, or affiliated with a non-profit organizations, they are nevertheless subject to the UCL. Courts have repeatedly held that non-profit organizations are "businesses" subject to the UCL – and that their practices are "business practices" subject to the UCL. (*See, e.g., Executive Committee Representing Signing Petitioners of Archdiocese of Western U.S. v. Kaplan,* 2004 WL 6084228, at *6 (C.D.Cal. 2004) (citing *People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1075–76) ("*Kaplan*") ("The solicitation activities of charities come within the purview of § 17200.").) Moreover, the UCL has been applied on a number of occasions to religious organizations such as Defendants. (*See, e.g., Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar* (9th Cir. 1999) 179 F.3d 1244 (involving Sufi religious organization); *Kaplan, supra,* 2004 WL 6084228 (involving Catholic Church); *Pines v. Tomson* (1984) 160 Cal.App.3d 370 (involving Christian religious organization).) Thus, under the UCL, Defendants are "businesses" and their solicitation

and related activities are "business practices."

## B. Defendants' Illegal Conduct is Not Protected by the First Amendment

The argument that ritual animal sacrifice is protected by the First Amendment's Free Exercise Clause, while lacking any basis in this case, nevertheless finds its best support in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (1993) 508 U.S. 520 ("*Lukumi*"). There, the Court held unconstitutional city ordinances banning religious animal sacrifice. Because the Court found that the city had adopted the laws at issue with the express purpose of targeting religious practices, the Court struck down the laws as discriminatory. (*Id.* at 534. ("suppression of the central element of the Santeria worship service was the object of the ordinances.").) However, the Court also observed, significantly, "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." (*Id.* at p.531.)

Here, unlike the ordinances in *Lukumi*, PC 597(a) is neutral and of general applicability. PC 597(a) was adopted *not to* discriminate against Defendants, but to prohibit undesirable, anti-social behavior. Adding the imprimatur of religion to illegal activity does not make it legal. Thus, as the Court noted in holding that illegal drug use is not protected by the First Amendment even if for religious purposes, "Respondents urge us to hold, quite simply, that when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation. We have never held that, and decline to do so now." (*Employment Div., Dep't of Human Res. of Oregon v. Smith* (1990) 494 U.S. 872, 882.)

## C. Without Relief, Plaintiffs, the Public and the Animals Protected by Animal Cruelty Laws Will Suffer Irreparable Harm

Defendants admit they engage in an act that is directly prohibited by PC 597(a) and charge participants a fee to do it, but claim they are exempt because of their religion. However, Plaintiff has shown it is likely to prevail at trial. To obtain temporary and

preliminary injunctive relief, Plaintiff must also show – and has shown – that the balance of hardships weighs in its favor. (*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* (9th Cir.2001) 240 F.3d 832, 839 n. 7; *Niu v. U.S.* (C.D.Cal. 2011) 821 F.Supp.2d 1164, 1167.) Plaintiff has shown the many hardships that it and the public are suffering – including being subjected to significant public health risks and incurring thousands of dollars in unnecessary costs. Plaintiff has also shown it has the right to sue under the UCL to stop these harms. In contrast, Defendants have no legal right to engage in this illegal, inhumane and dangerous conduct.

## V.   CONCLUSION

Plaintiffs respectfully request that this Court grant a TRO and preliminary injunction to take immediate effect, as Defendants are imminently about to begin engaging in the unlawful acts described herein. Plaintiff is prepared to post a bond in the amount of $7,500, which represents the profit to Defendant of $25 per chicken for an estimated 300 chickens.

As Defendants can easily perform their same ceremonies using bags of coins as described in Exhibit A to the Declaration of Bryan Pease, there is no harm to Defendants in granting this TRO. Instead of taking money in exchange for illegally killing and disposing of a live chicken not being used for food, Defendants will be able to perform the ceremony directly with the money.

Dated: September 29, 2016   By:   **SIMON LAW GROUP**
**LAW OFFICE OF BRYAN W. PEASE**

/s/ Bryan W. Pease
Bryan W. Pease
Attorneys for Plaintiff