David R. Simon (SBN 145197)
**SIMON LAW GROUP**
17595 Harvard Avenue, Suite C515
Irvine, CA 92614
Ph. (714) 975-1728

Bryan W. Pease (SBN 239139)
**LAW OFFICE OF BRYAN W. PEASE**
3170 Fourth Ave., Suite 250
San Diego, CA 92103
Ph. (619) 723-0369

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED POULTRY CONCERNS, a Maryland nonprofit corporation, <br><br> **Plaintiff,** <br><br> vs. <br><br> CHABAD OF IRVINE, a California corporation; ALTER TENENBAUM, an individual; and DOES 1 through 50, <br><br> **Defendants**. | **CASE NO. 8:16-cv-01810-AB (GJSx)** <br> *Hon. André Birotte Jr., Ctrm 7B* <br> *Mag. Gail J. Standish, Ctrm 23* <br><br> **OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION** <br><br> Date: January 23, 2017 <br> Time: 10:00 a.m. <br> Location: Courtroom 7B <br> 350 West First Street, Los Angeles |

# Table of Contents

I.   Introduction ................................................................................................. 1

II.  The Public Interest Exception Applies to Plaintiff's Lawsuit ............................ 2

   A.  Plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which Plaintiff is a member. ............................. 3

   B.  Plaintiff's action is to enforce an important right affecting the public interest, and will confer a significant benefit on the general public. ....................................... 3

   C.  Private enforcement is necessary and places a disproportionate financial burden on UPC in relation to UPC's stake in the matter. .................................................. 4

III. Defendant's Motion Fails on Both Prongs ................................................. 5

   A.  Defendants' Conduct is Not Protected by the Anti-SLAPP Law .............................. 5

   B.  UPC Can Establish a Substantial Likelihood that It Will Prevail ........................... 11

     1.  Defendants have Committed Unlawful Acts in Connection with Business Practices ................................................................................................... 11

     2.  Plaintiff Has Standing to Pursue its UCL Claim ..................................... 11

IV.  Conclusion ................................................................................................ 13

# Table of Authorities

## Cases

*Animal Legal Defense Fund v. LT Napa Partners* (2015) 234 Cal.App.4th 1270 .......... 11, 12, 13

*Capitol Square Review & Advisory Bd. v. Pinette* (1995) 515 U.S. 753 .......... 7

*Castillo v. Pacheco* (2007) 150 Cal.App.4th 242 .......... 5, 6, 8, 11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.* (1999) 20 Cal.4th 163 .......... 11

*City of Cotati v. Cashman* (2002) 29 Cal. 4th 69 .......... 6

*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal. App. 4th 435 .......... 6

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) .......... 9, 10

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) .......... 8

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 .......... 12

*Roybal v. Governing Bd. of Salinas City Elementary Sch. Dist.* (2008) 159 Cal.App.4th 1143 .......... 4

*Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128 (9th Cir. 2004) .......... 8

*Texas v. Johnson* (1989) 491 U.S. 397 .......... 9

*Woodland Hills Residents Association, Inc. v. City Council* (1979) 23 Cal.3d 917 .......... 4

## Statutes

Cal. Business & Professions Code section 17200 .......... 3, 11

Cal. Code of Civ. Proc. section 425.17 .......... 1, 2, 3, 4, 13

Cal. Code of Civ. Proc. section 425.16 .......... 1, 2, 5, 6, 7, 8

Cal. Penal Code section 597 .......... 3, 11, 13

## I. Introduction

Defendants engage in a business practice that involves killing and discarding chickens for a fee, in violation of state law. Now Defendants attempt to invoke California Code of Civil Procedure ("CCP") section 425.16, California's law against strategic litigation against public participation ("anti-SLAPP"), turning the purpose of the statute on its head, as Plaintiff is a nonprofit acting in the public interest, and Defendants are engaging in illegal business practices. The Legislature has addressed the alarming increase in such abuse of the anti-SLAPP law with CCP section 425.17, which is designed to stop such enterprises from using the anti-SLAPP law as a weapon against their public interest adversaries. Because Plaintiff's lawsuit meets all of the criteria of CCP section 425.17, it is entirely exempt from the anti-SLAPP law.

Moreover, Defendant's Anti-SLAPP Motion ("Motion") is frivolous, has already been rejected by a state court on the exact same issue, and is not in compliance with L.R. 7-3. Counsel for the parties never met and conferred on any anti-SLAPP motion. Rather, they met and conferred only on Plaintiff's motion for preliminary injunction and Defendant's motion to dismiss being heard concurrently. (Pease Declaration in Opposition to Defendants' Motion to Dismiss and Anti-SLAPP Motion, Exs. A, B.)

Additionally, this is the second time Defendants have brought an anti-SLAPP motion in the present case. Defendants included an anti-SLAPP motion in their motion to dissolve the TRO on October 11, 2016. (Dkt. # 23.) Plaintiff filed a response to this motion within two hours and pointed out that the California Court of Appeal has already ruled the anti-SLAPP statute does not protect conduct in furtherance of religion, and that a state court already denied an anti-SLAPP motion brought by Chabad of Irvine on the same issue. (Dkt. #25, ¶ 7.) At the telephonic hearing on Defendants' motions later that same day, the Court did not grant Defendants' anti-SLAPP motion.

Because Defendant's *two* anti-SLAPP motions are both frivolous, and Defendants were certainly aware of this fact on filing their second motion, which they failed to meet

and confer on prior to filing as required by the local rules, Plaintiff is entitled to an award of attorneys' fees against Defendant *and its attorneys* pursuant to CCP section 425.16(c).

## II. The Public Interest Exception Applies to Plaintiff's Lawsuit

In 2003, the Legislature determined that there had been a "disturbing abuse" of the anti-SLAPP law, which had undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of the section. (CCP section 425.17(a).) The Legislature found that corporations were invoking the protections of the anti-SLAPP statute to delay and discourage litigation against them, using the statute as a litigation weapon. (Senate Rules Committee Analysis to SB515, 8/22/03.) The Legislature further found that it is in the public's interest to encourage continued participation in matters of public significance, and that such participation should not be chilled by anti-SLAPP filings. (CCP section 425.17(a).) Accordingly, the Legislature enacted CCP section 425.17, which provides that certain actions are not subject to a special motion to strike.

Thus, under CCP section 425.17(b), the anti-SLAPP statute cannot be used to defeat any action brought solely in the public interest or on behalf of the general public where all of the following conditions exist:

- The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. Claims for attorney's fees, costs, or penalties do not count as seeking "greater" or "different" relief;

- The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons; and

- Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

As shown below, the instant case is exactly the type of case the Legislature sought to protect with CCP section 425.17. In fact, Defendants admit in their motion that "this is a public policy case." (Anti-SLAPP Motion at 11:6.)

### A. **Plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which Plaintiff is a member.**

The present case "is a private attorney general action" brought by Plaintiff seeking to require Defendants to comply with a state law prohibiting killing animals except for specified purposes. (Complaint ¶ 1.) The Complaint alleges a single cause of action for violation of Business and Professions Code section 17200, *et. seq.*, also known as the Unfair Competition Law ("UCL.")

The Complaint's prayer for relief seeks no greater or different relief for Plaintiff than for the general public. Plaintiff does not seek any damages whatsoever, but rather seeks only preliminary and permanent injunctions to enjoin illegal conduct harming public health and morals, declaratory relief, attorney's fees and costs, and pre- and post-judgment interest. (Complaint, Prayer for Relief, Dkt. # 1.)

### B. **Plaintiff's action is to enforce an important right affecting the public interest, and will confer a significant benefit on the general public.**

Plaintiff's action will confer on the general public the significant benefit of enforcement of an important animal cruelty law, Penal Code section 597(a), which prohibits Defendants from killing animals except for specified purposes. Killing and discarding animals in a parking lot tears at the social fabric as such acts would be illegal if carried out for any secular purpose but is being tolerated solely because of a mistaken belief that there is some kind of constitutional right to engage in ritual animal killing.

There are also public health and environmental risks posed by this behavior as described in the declaration of Michael McCabe filed in support of Plaintiff's motion for preliminary injunction ("MPI") being heard concurrently. The declaration of Ed Boks (also filed in support of the MPI), former general manager of Los Angeles Department of

Animals Services, also shows that Plaintiff's action could lead to the beneficial result of city managers enforcing animal cruelty laws uniformly rather than refraining from enforcing some laws under an erroneous belief there is a constitutional right to kill animals for religious purposes.

Defendants claim in their anti-SLAPP motion that they consider the killing of these animals to be actions they have "exercised in connection with a public issue." (Motion at 9:5-7.) Defendants also claim the animal killing "is a public ceremony." (*Id.* at 12:7.) By making these claims to invoke the protection of the anti-SLAPP statute, they are conceding that the lawsuit is subject to the public interest exception because the point of the lawsuit is in part to protect the public from having to bear witness to any such spectacle of animal cruelty being carried on with impunity. Defendants also claim their actions "concern far more people than the Chabad's yearly participants." (*Id.* at 12:13-14.)

In short, the illegal killing and discarding of animals is an issue of public morals and public concern, and the public interest exception to the anti-SLAPP statute applies squarely to what Defendants openly admit is a "public policy case."

### C. **Private enforcement is necessary and places a disproportionate financial burden on UPC in relation to UPC's stake in the matter.**

Finally, the public interest exception of Code of Civil Procedure section 425.17 applies because of the disproportionate financial burden on Plaintiff to protect the public interest. The financial burden element is met where "the cost of the claimant's legal victory transcends his personal interest – that is, when the burden of the litigation was disproportionate to the plaintiff's individual stake in the matter." (*Roybal v. Governing Bd. of Salinas City Elementary Sch. Dist.* (2008) 159 Cal.App.4th 1143, 1151; see also *Woodland Hills Residents Association, Inc. v. City Council* (1979) 23 Cal.3d 917, 941.)

Here, Plaintiff does not seek any damages but only equitable relief for itself and the general public. Plaintiff has incurred a significant financial burden without any

4

financial gain, and the burden of the litigation is thus completely disproportionate to Plaintiff's interests in this matter.  Accordingly, the necessity and financial burden of Plaintiff's private enforcement action makes the public interest exception applicable.

### III. Defendant's Motion Fails on Both Prongs

Even without the public interest exception, Defendants' Motion must fail because they have not articulated what message, if any, their conduct in killing and discarding animals is meant to send, and to whom. Further, Plaintiff can show it is likely to prevail on the merits because Defendants' conduct is illegal. Accordingly, not only must Defendants' Motion fail, but because it is frivolous, it should result in an award of attorneys' fees for Plaintiff pursuant to CCP section 425.16(c).

#### A. Defendants' Conduct is Not Protected by the Anti-SLAPP Law

Defendants' assertion that their activities are protected as conduct in furtherance of religious freedom is based on a gross misreading of the law.  In fact, the right to free exercise of religion is *not* protected by the anti-SLAPP statute. (*Castillo v. Pacheco* (2007) 150 Cal.App.4th 242, 250.)

In *Castillo*, the plaintiff filed a nuisance complaint against defendant based on defendant's use of a large ceremonial outdoor open fire. (*Id.* at p. 245.)  The defendant filed an anti-SLAPP motion, arguing that the complaint arose from conduct in furtherance of the constitutional right to free speech of a religious nature. (*Ibid.*) Defendant's anti-SLAPP motion was supported by declarations containing testimony that the ceremony at issue was central to the declarants' religious beliefs. (*Id.* at p. 246.)  The trial court's denial of defendant's motion was upheld on appeal, wherein the Court of Appeal held that "the anti-SLAPP statute does not provide a vehicle for early scrutiny of a cause of action against a person arising from an act of that person in furtherance of the person's right of free exercise of religion." (*Id.* at 245.)

*Castillo* explicitly "reject[ed] [defendant's] attempt to conflate the right of free speech and the right of free exercise of religion for purposes of application of the anti-

SLAPP statute." (*Id.* at p. 251.) *Castillo* noted the proper inquiry is "whether the defendant's act underlying the plaintiff's cause of action *itself* was an act in furtherance of the right of petition or free speech." (*Id.* at 249, emphasis in original.) The fire in *Castillo* from which the nuisance suit arose, even though in connection with a religious ceremony, is like Defendants' actions in the present case in killing and discarding of chickens, which is not an act *itself* in furtherance of the right of petition or free speech.

Moreover, Defendants do not intend their conduct to be publicly expressive, but rather secretive and hidden and have actually gone to great lengths to *hide* their conduct. (Mulato Decl., ¶ 6; Bernstein Decl., ¶ 2.) While the question of whether Defendants should be allowed to engage in their animal killing behavior is certainly a matter of public concern, any message conveyed by the ritual itself of transferring a participant's sins to the animal is inherently private and religious in nature rather than publicly expressive, and in any event, Plaintiff is not seeking to stop any part of the ritual that expresses anything, but rather the illegal killing and discarding of animals, which is not *itself* expressive. Conduct of this religious nature was not protected by the anti-SLAPP law in *Castillo* and should not be protected here either. Defendants' argument that their conduct is protected by the anti-SLAPP law is simply contrary to the clear wording of the statute and controlling authority.

Defendants' attempt to invoke the anti-SLAPP law fails for another reason as well. "To the extent [the complaint] alleges criminal conduct, there is no protected activity as defined by the anti-SLAPP statute." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal. App. 4th 435, 445.) "[S]ection 425.16 cannot be invoked by a defendant whose *assertedly protected activity* is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition. [Citations.]" (*Id.*)

"That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*City of Cotati v. Cashman* (2002) 29 Cal. 4th 69, 78.) "The anti-SLAPP statute cannot be read to mean that 'any claim asserted

in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is based on conduct in exercise of those rights.' [Citations.]") (*Id.* at 77.)

Accordingly, even if, as Defendants seem to claim, Plaintiff's true motive is not to stop the illegal killing of animals, but rather to stop public expressive activity surrounding the attendant ceremonies, this is irrelevant to the anti-SLAPP inquiry over whether the cause of action asserted actually arises from protected activity itself. Because the lawsuit only seeks to stop illegal conduct, and not any of the attendant ceremonies around the practice, there is absolutely no argument that the specific conduct that the single cause of action arises from constitutes "expressive activity" such that it would receive anti-SLAPP protection. The killing itself would need to be public expressive activity to qualify for anti-SLAPP protection.

The cases cited by Defendants are not to the contrary, and Defendants have in fact grossly misrepresented the holdings of these cases, which is yet another reason the motion fails, is frivolous, and should result in an award of attorneys' fees for Plaintiff pursuant to CCP section 425.16(c).

*Capitol Square Review & Advisory Bd. v. Pinette* (1995) 515 U.S. 753, 760 involved the Ku Klux Klan wishing to display a cross in a public square. The sole issue before the Supreme Court was whether the display violated the Establishment Clause by endorsing a religious view on the part of the city. The Court held that the Establishment Clause is not violated when religious expression is either private, or in a public forum equally open to all. This case was not a California anti-SLAPP case and only implicated the Establishment Clause of the First Amendment, not California's anti-SLAPP law. The issue was not the free speech rights or even the free exercise rights of the KKK, but rather the narrow question of whether the Establishment Clause prevented the city from allowing the display. This is a totally separate issue from that presented by Defendants' Motion, which concerns whether California's anti-SLAPP law operates just like the First

Amendment to protect religious behavior, which it does not. (*Castillo, supra,* 150 Cal.App.4th 242, 244 ("We conclude section 425.16 did not import wholesale the protections of the First Amendment.")

To the extent Defendants are claiming their actions in illegally killing and discarding chickens as part of a religious ritual is analogous to the KKK displaying a cross in a public square and should therefore be protected, that analogy fails because killing and discarding chickens is not an act in *itself* intended to and does not convey any public message. (*Id.* at 249.)

Defendants also misrepresent the holding of *Southern Oregon Barter Fair v. Jackson County, Oregon* (9th Cir. 2004) 372 F.3d 1128, 1135 ("*Southern Oregon*") by implying the case stands for the proposition that all "religious ceremonies" are expressive. (Motion at 8:8-12.) However, *Southern Oregon* stands for no such proposition. On the contrary, the Ninth Circuit upheld an Oregon law requiring that organizations – including religious ones – obtain a permit in order to conduct a fair. In reaching its conclusion that a permit was required, the Ninth Circuit held "in this case, it is not crystal clear whether the purposes of the Fair are expressive." (*Id.* at 1135.) Similarly, there is no indication here that Defendants' purpose in killing and discarding chickens is expressive, and accordingly, their behavior is not protected as speech.

Defendants also rely on *Kaahumanu v. Hawaii* (9th Cir. 2012) 682 F.3d 789, 799. This case involved the First Amendment right to hold a wedding ceremony on a public beach. "Wedding ceremonies convey important messages about the couple, their beliefs, and their relationship to each other and to their community." (*Id*.) However, unlike Defendants in the present case, who wish to be able to privately and secretly kill and discard chickens, the plaintiff in *Kaahumanu* wanted to be able to engage in First Amendment protected speech in a public forum.

Perhaps the grossest misrepresentation in Defendants' Motion is their claim that *Texas v. Johnson* (1989) 491 U.S. 397, 404 held that "[r]eligious ceremonies are by definition expressive." (Motion at 8:18-19.) In reality, *Texas v. Johnson* held:

> While we have **rejected** "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," [citation], we have acknowledged that conduct **may** be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments," [citation].

(*Ibid,* emphasis added.)

The Court went on to describe the criteria for determining "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play." (*Ibid.*) Those criteria are "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.' [Citation.]"

Contrary to Defendants' claim that *Texas v. Johnson* had anything to do with religious conduct, it was actually the seminal flag burning case that held that actions that are imbued with elements of communication are expressive. It did not hold that religious ceremonies are by definition "imbued with elements of communication" as claimed by Defendants, and Defendants have not identified any particularized message contained in their animal killings that would be understood by those who view it.

Finally, Defendants rely on *Hilton v. Hallmark Cards*, 599 F.3d 894, 907 (9th Cir. 2010), in which Paris Hilton sued Hallmark for appropriation of her image, and Hallmark filed an anti-SLAPP motion. The Ninth Circuit found the card was in connection with a public issue or an issue of public interest but denied the anti-SLAPP motion because Hilton had shown a probability of success on the merits of her claim. Thus, Defendants in the present case argue that their killing and discarding of chickens as part of a private religious ritual is similar to a mass produced and distributed Hallmark card concerning a widely known celebrity.

The Ninth Circuit in *Hilton* noted that California "appellate courts have developed multiple tests to determine whether a defendant's activity is in connection with a public issue," and found that the Hallmark card easily fit both tests. (*Ibid.*) However, Defendants' conduct does not fit either test. The Third District Court of Appeal test is:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, . . . [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

(*Id.* at 906-907.)

Defendants' conduct cannot possibly meet this test because in addition to not being a statement itself, the killing is carried out before "a relatively small, specific audience."

The First and Fourth District Courts of Appeal test is whether the expressive statements concern any of the following: "(1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread, public interest.'" (*Ibid.*)

Defendants' conduct also does not meet this test, again because the killing is religious conduct not intended to convey a message to the public. A person's private sins, which are not even communicated but are rather "transferred" to the animal, do not constitute a topic of widespread, public interest. Even if they were, Plaintiff does not seek to stop the ritual of atoning for the sins. Rather, Plaintiff seeks to stop the killing and discarding of animals, which is not itself communicative.

Defendants also assert that the California Constitution somehow provides them greater protection than the First Amendment. However, while the California Constitution

has been held to protect the right of free speech in shopping centers, Plaintiff is unaware of any other additional rights beyond those already conferred by the First Amendment, and Defendants have not identified any. Further, the California Constitution cannot transform the anti-SLAPP statute into something that it is not. The anti-SLAPP statute is a mechanism to address violations of freedom of expression in connection with matters of public concern, not private religious conduct. (*Castillo, supra,* 150 Cal.App.4th at 250.)

### B. UPC Can Establish a Substantial Likelihood that It Will Prevail

There should be no need to reach the second prong of the anti-SLAPP analysis, because Plaintiff's case is protected by the public interest exception, and the conduct the cause of action arises from is not protected speech. If the Court does reach this point of the analysis, however, Defendants' Motion again must fail because Plaintiff has shown a probability of success on the merits.

#### 1. Defendants have Committed Unlawful Acts in Connection with Business Practices

The UCL prohibits any act that is "***unlawful***, unfair or fraudulent…." (Bus. & Prof. Code § 17200, emphasis added.) "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." (*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180 (internal quotations omitted).) As there is no exception to Penal Code section 597(a) for killing and discarding animals for religious rituals, Defendants are in clear violation of this penal code section.

#### 2. Plaintiff Has Standing to Pursue its UCL Claim

Defendants' argument that Plaintiff has no standing to pursue its cause of action for violation of the UCL is likewise flawed. In fact, an organizational plaintiff can establish standing to pursue a UCL claim by showing that its resources were diverted to combat the alleged illegal activity. (*Animal Legal Defense Fund v. LT Napa Partners* (2015) 234 Cal.App.4th 1270 ("*Napa Partners*").)

11
Opposition to Anti-SLAPP

One of the purposes of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.)  Under *Kwikset*, a plaintiff pursing a UCL claim establishes standing by showing that s/he suffered economic injury in fact, and such injury was caused by defendant's conduct. (*Id.* at p. 322.)  Injury in fact "is not a substantial or insurmountable hurdle," and merely requires a plaintiff to allege "some specific, 'identifiable trifle' of injury." (*Id.*)

In *Napa Partners*, the plaintiff, an animal rights organization, paid an investigator to visit defendant's restaurant three times in order to find evidence that defendant was still selling foie gras from force fed ducks despite a statewide ban on its sale. (*Napa Partners, supra,* 234 Cal.App.4th at p.1275-76.)   When law enforcement authorities refused to act on the evidence obtained, the plaintiff brought a civil suit for violation of the UCL, seeking an injunction prohibiting further violations of the ban. (*Id.* at 1276.) Defendant brought an anti-SLAPP motion, arguing that plaintiff did not have standing to pursue its claim and that its activity in selling foie gras was somehow expressive because it concerned the ban, a matter of public concern. (*Id.* at 1278.) Both the trial court and the Court of Appeal disagreed.  In finding the plaintiff did have standing, the Court of Appeal pointed to the declaration from plaintiff's executive director. (*Id.* at 1280.)  The court found that this declaration established that plaintiff had dedicated significant time and resources to investigating defendant's violations, which established standing for purposes of the UCL. (*Id.* at 1282.) Because the actions complained about were illegal, the anti-SLAPP motion was denied. (*Id.* at 1284.)

Like the plaintiff in *Napa Partners*, UPC is an organization dedicated to protecting animal rights and preventing animal cruelty. (Davis MPI Decl, Dkt. #68-7, ¶ 3.) UPC had an interest in stopping Defendants' illegal acts prior to the filing of this lawsuit. (*Id*. ¶¶ 4-6; Steinau MPI Decl., Dkt. #68-14, ¶¶ 2-12.) Because Defendants refused to stop their illegal practices, UPC had no other option but to file this lawsuit. Defendant's illegal

practices have caused UPC to divert significant resources, which would have otherwise been used to further UPC's core purpose of protecting animals and working to end the use of chickens in Kapparot even when the acts are carried out *legally*, through education and advertising. (Davis Decl. ¶ 4.)

Defendants argue that because UPC has a mission of stopping the use of chickens in Kapparot anyway, its resources could not have been diverted by Defendants' acts. However, this misses the point. UPC has an educational and persuasive mission to stop *any* use of chickens in Kapparot, including when the birds are used for food. The *illegal* killing and discarding of birds should not have to be part of this mission, because no one has a right to carry out illegal acts.

When UPC learned of Defendants' *illegal* acts that interfered with UPC's mission, UPC's organizational resources were diverted attempting to convince authorities to take action, which UPC should not have had to do because Defendants have a duty to follow the law. Under *Napa Partners*, such diversion of organizational resources to combat Defendants' unlawful acts qualifies as the minimal showing of economic harm needed for standing under the UCL.

## IV. Conclusion

Code of Civil Procedure section 425.17 was enacted to prevent anti-SLAPP motions from being filed in cases like this one, where Plaintiff seeks only equitable relief to protect the public interest and is not seeking damages. Thus, the anti-SLAPP law cannot not apply to the action. Moreover, Defendants' conduct that is the subject of this lawsuit is not expressive activity regarding a matter of public concern and is thus not intended for the protection by the anti-SLAPP law. Even if the statute could apply, Plaintiff has shown a probability of succeeding on the merits of its claim because it can establish that Defendants violated Penal Code section 597(a). Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion.

Respectfully submitted,        **SIMON LAW GROUP**
                               **LAW OFFICE OF BRYAN W. PEASE**

Dated: January 3, 2017    By:   /s/ Bryan W. Pease

                                David R. Simon
                                Bryan W. Pease
                                Attorneys for Plaintiff
                                United Poultry Concerns