David R. Simon (SBN 145197)
**SIMON LAW GROUP**
17595 Harvard Avenue, Suite C515
Irvine, CA 92614
Ph. (714) 975-1728

Bryan W. Pease (SBN 239139)
**LAW OFFICE OF BRYAN W. PEASE**
3170 Fourth Ave., Suite 250
San Diego, CA 92103
Ph. (619) 723-0369

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED POULTRY CONCERNS, a Maryland nonprofit corporation,<br><br>**Plaintiff,**<br>vs.<br>CHABAD OF IRVINE, a California corporation; ALTER TENENBAUM, an individual; and DOES 1 through 50,<br><br>**Defendants.** | **CASE NO. 8:16-cv-01810-AB (GJSx)**<br>*Hon. André Birotte Jr., Ctrm 7B*<br>*Mag. Gail J. Standish, Ctrm 23*<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO FILE DR. MARK GOLDFEDER'S BRIEF AS *AMICUS CURIAE***<br><br>Date: January 23, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom 7B<br>350 West First Street, Los Angeles |

Plaintiff United Poultry Concerns hereby opposes Dr. Mark Goldfeder's Motion for Leave to File Brief as *Amicus Curiae*. This case has been pending since September 30, 2016. On January 13, 2017, the Friday before a holiday weekend, counsel for proposed amicus sent an email to Plaintiff's counsel seeking an agreement to file the brief, and failing to indicate that the brief would be in favor of Defendants. (Cannizzaro Decl., Dkt. # 80.) The morning of the next business

day, proposed amicus went ahead and filed his brief without Plaintiff's agreement, noting "Plaintiff has not responded." (Dkt. #78-82.)

Thus, proposed amicus seeks to interject himself at this late hour into a hearing taking place on January 23, 2017 that is already complex, involving three pending motions, another one of which--Defendants' anti-SLAPP motion--was also filed without meeting and conferring as required by the local rules.

Dr. Goldfeder's special insight into this case is alleged to be derived from his experience "in advanced Jewish law as a rabbi and rabbinic judge." (Motion at 2:18, Dkt. # 82.) However, this case is not about Chabad law any more than it is about Sharia Law. Rather, it is about a neutral California Penal Code section of general applicability, which prohibits *anyone,* regardless of secular or religious motivation, from killing and discarding chickens in a parking lot. (Penal Code section 597(a).)

As noted in the Declaration of Bryan Pease in Support of Plaintiff's Motion for Preliminary Injunction (Dkt. # 68-13), there is a belief among some who are associated with Defendants that secular laws should not apply to those motivated by religion, including even mandatory reporting laws for child abuse. (*Id.,* ¶10.) However, proposed amicus' beliefs on which secular laws those motivated by religion should be required to follow and which they should not have no relevance to this Court's analysis.

Proposed amicus argues for "reasonable accommodations" that would allow Defendants to break the law in the name of religion. (Amicus Brief at 1:18, Dkt. # 79.) Proposed amicus then distorts the relief requested by Plaintiff, claiming it is "forcing Chabad not to use chickens in Kapparot." (Amicus Brief at 2:4.) However, the requested injunctive relief would allow Defendants to use chickens in Kapparot so long as the animals are used for food rather than discarded afterwards.

Proposed amicus actually supports Plaintiff's argument that Defendants' anti-SLAPP motion is frivolous by noting that Kapparot is "an introspective religious atonement ceremony," not a publicly expressive ceremony intended to convey a message of public importance. (Amicus Brief at 2:11.)

Proposed Amicus claims Plaintiff's lawsuit is in part based on the concept that Kapparot using chickens has a relatively short history in the U.S. (Amicus Brief at 3:4-5.) However, Plaintiff never disputed that some people have used chickens for this ceremony in the U.S. and other parts of the world for a very long time. Rather, Plaintiff noted that the commercial scale of the activity, and the manner in which Defendants practice it, in which participants line up in a parking lot, pay a fee, and have chickens provided in an assembly-line manner, is a relatively recent development. Plaintiff's unfair business practices action only challenges the commercial nature of this enterprise and would not be able to prohibit individuals from performing the ceremony themselves using chickens.

The bulk of Proposed Amicus' brief is dedicated to asserting that some past rabbis have supported the idea that using chickens in Kapparot is required. However, the relevant inquiry in the present case is whether *Defendants* in the present case believe it is required, which can help inform the Court of the level of burden it would be imposing on Defendants by not creating the religious exception they have requested for Penal Code section 597(a).

In a deposition taken just yesterday in the pending state court case, Defendant in the present case Rabbi Alter Tenenbaum, acting as the person most knowledgeable for Defendant Chabad of Irvine, testified that he and Chabad of Irvine do *not* believe using chickens in Kapparot is required. Rather, it is preferred. (Tr. at 84-85, attached to Declaration of Bryan Pease in Opposition to Motion to File Amicus Brief.) He also indicated that even when chickens are used in the ceremony, actually killing them also does not have to be part of the ceremony, and rather this is also simply a preference. (Tr. at 72-73.) Rabbi Tenenbaum also testified that the point of the ritual is "punishment" of an animal for a person's sins, and killing the animal is preferred because it increases the "severity" for the participant. (Tr. at 58.)

Thus, Defendants' arguments that they have a religious "necessity" that militates in favor of creating a judge-made exception to the Penal Code for this conduct is not supported by Defendants' own statements. Unlike the Santeria practitioners in *Lukumi*, there is no deity that requires animal sacrifice, but instead this is, as noted by Proposed Amicus, an introspective ceremony intended to cause self-reflection. Even if Defendants in the present case believed killing

and discarding chickens was necessary to appease a deity, because the law in the present case is a neutral law of general applicability, religious belief does not require an exception or a finding that the law is unconstitutional. Defendants claim the exception in the law for killing animals for food is evidence of discriminatory effect or intent, but the reality is that Defendants can take advantage of this exception simply by using the animals for food. Nothing in their religion requires them to kill and discard animals, by their own admission.

      Thus, Proposed Amicus brings nothing relevant to this case, and leave to participate as *amicus curiae* should be denied.

Respectfully submitted,         **SIMON LAW GROUP**
       **LAW OFFICE OF BRYAN W. PEASE**

Dated: January 20, 2017     By:    /s/ Bryan W. Pease

       David R. Simon
       Bryan W. Pease
       Attorneys for Plaintiff
       United Poultry Concerns