UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 16-01810-AB(GJSx) | Date: | May 12, 2017 |
|---|---|---|---|

| Title: | *United Poultry Concerns v. Chabad of Irvine, et al.* |
|---|---|

Present: The Honorable  ANDRÉ BIROTTE JR.

| Ingrid Valdes | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** [In Chambers] Order **GRANTING** Defendant's Motion to Dismiss

Pending before the Court is Defendant Chabad of Irvine's ("Defendant") Motion to Dismiss Plaintiff United Poultry Concerns' ("Plaintiff") First Amended Complaint. ("Mot.", Dkt. No. 90-1). Plaintiff filed an opposition on March 27, 2017 (Dkt. No. 94) and Defendant filed a reply on April 4, 2017 (Dkt. No. 99). On April 10, 2017, the Court heard oral arguments from the parties and took the Defendant's motion under submission. Upon consideration of the parties' arguments, papers, the case file, and for the reasons stated below, the court hereby **GRANTS** Defendants' Motion to Dismiss.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff United Poultry Concerns is a non-profit corporation, incorporated in Maryland, with its headquarters and principal place of business in Virginia. ("FAC", Dkt. No. 85 ¶ 11). Plaintiff's corporation is dedicated to the respectful treatment of domestic fowl. (*Id.* ¶ 11). Plaintiff's core mission involves running a sanctuary for Chickens in Virginia, and teaching people about abuses in the egg and chicken meat industries, as well

as the natural lives of free chickens and the benefits of chickens as companion animals. (*Id.*)  Defendant Chabad of Irvine is an orthodox Jewish Synagogue, and a 501(c)(3) non-profit religious organization.  (Decl. Alter Tenenbaum ¶ 11).  Chabad of Irvine is located in Orange County, California.  (Comp. ¶ 12).

 Plaintiff's complaint alleges the following:  Defendant conducts an annual ceremony known Kapparot or Kaporos ("Kapparot").  (FAC ¶ 2).  Kapparot usually occurs in September or October between the Jewish High Holidays of Rosh Hashanah and Yom Kippur.  (*Id.* ¶ 3).  Kapparot is a ritual which involves killing a chicken as atonement for a participant's sins.  (*Id.* ¶ 4).  Plaintiff alleges that Defendant orders and receives hundreds of chickens for the Kapparot ceremony and charges a fee of $27 to ritually kill and discard each chicken.  (*Id.* ¶ 29).  Plaintiff alleges that United Poultry Concerns is categorically opposed to the killing and discarding of chickens solely for the purpose of a religious ritual.  (*Id.* ¶ 11).  Plaintiff also alleges that Defendant's act of killing and discarding chickens is a violation of California Penal Code §597 (a).  Finally, Plaintiff asserts that UPC suffered economic damages in the form of diversion of resources incurred in combatting Defendant's activities.  (*Id.* ¶ 36).

 Plaintiff filed the instant action on September 29, 2016.  (Dkt. No. 1).  On January 20, 2017, the Court dismissed the complaint for failure to allege complete diversity of citizenship, however Plaintiff was granted leave to amend.  (*See* Dkt. No. 84).  On February 19, 2017, Plaintiff filed a First Amended Complaint asserting a claim under the California Unfair Competition Law ("UCL")(California Business and Professions Code § 17200 *et seq.*) (Dkt. No. 85).  Plaintiff seeks an order which would effectively enjoin Defendant from accepting donations in return for slaughtering chickens during the Kapparot ceremony, or in the alternative would compel Defendant to utilize the slaughtered chickens for food consistent with the provisions of California Penal Code § 597(a).  Defendant filed the instant motion on March 13, 2017.  (Dkt. No 90). Defendant moves to dismiss Plaintiff's complaint on multiple grounds.  Defendant argues that: (1) the complaint should be dismissed pursuant to rule 12(b)(1) on the grounds that Plaintiff fails to establish that the amount in controversy exceeds $75,000 and thus the Court lacks diversity jurisdiction over this matter; (2) Plaintiff lacks both Article III standing and statutory standing; (3) the complaint should be dismissed pursuant to rule 12(b)(6) on the grounds that Plaintiff fails to allege a required element of Penal Code § 597(a), which is a predicate to Plaintiff's UCL claim; and (4) The Constitution bars the requested injunction because it would violate the Free Exercise Clause and would amount to an unconstitutional restraint on free speech.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motions

Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)") requires that a pleading present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." That is, a pleading that does not satisfy Rule 8(a) is subject to dismissal under Rule 12(b)(6). Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 969, 699 (9th Cir. 1988

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted). Although this does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009). A sufficiently pled claim must be "plausible on its face." *Id*. "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. For purposes of a motion to dismiss, allegations of fact are taken as true and are construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010).

The court must distinguish between the pleading's allegations of fact and its legal conclusions. *See Iqbal*, 555 U.S. at 675. A court "must take all of the factual allegations in the complaint as true," but should not give legal conclusions this assumption of veracity. *Id*. at 678. The court must then decide whether the pleading's factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id*. at 679. The court may not consider material beyond the pleadings other than judicially noticeable documents, documents attached to the complaint or to which the complaint refers extensively, or documents that form the basis of the claims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B. Rule 12(b)(1)

As with Rule 12(b)(6), where a defendant brings a facial attack on the subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), courts "assume [plaintiff's] [factual] allegations to be true and draw all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Courts do not accept the truthfulness of any legal conclusions contained in the complaint when assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1). *Warren v. Fox Family*

*Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Under Rule 12(b)(1), a party may also bring a factual attack on the district court's subject matter jurisdiction to hear a claim. Unlike a Rule 12(b)(6) motion or a facial Rule 12(b)(1) motion, a factual attack on subject matter jurisdiction under Rule 12(b)(1) affords the district court discretion to consider extrinsic evidence and, if disputed, weigh the evidence to determine whether the facts support subject matter jurisdiction, without converting the motion into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating the evidence, the Court "need not presume the truthfulness of the plaintiffs' allegations." *Id.* "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

### III. DISCUSSION

#### A. Diversity Jurisdiction

As an initial matter, the Court considers Defendant's argument that the Court lacks diversity jurisdiction because the Plaintiff has failed to establish that the amount in Controversy exceeds $75,000. Plaintiff asserts that the amount in controversy requirement is satisfied in the instant controversy due to the fact that Chabad's compliance with the proposed injunction would cost upward of $75,000. The Ninth Circuit employs the "either viewpoint rule," which permits the "object of the litigation" to be valued from either the plaintiff's or defendant's viewpoint. *See McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S.D.) N.A.)*, 264 F.3d 952, 958 (9th Cir. 2001) ("under the "either viewpoint rule. . . .the potential cost to the defendant of complying with [an] injunction…represents the amount in controversy for jurisdictional purposes." Plaintiff asserts that the Defendant's future cost of complying with the injunction will exceed $75,000 in ten years. Plaintiffs base this estimate on declarations from UPC employee Ronnie Steinau who attended Defendant's Kapparot ceremony on October 1, 2014. (*See* Decl. of Ronnie Steinau, Dkt. No. 17-1, ¶ 6). Based on her observations, Steinau declared under penalty of perjury that the contents of Plaintiff's original verified complaint were correct. (*See* Complaint, Dkt. No. 1 at 8). Steinau declares that she called Chabad of Irvine before the Kapparot event in October 2014 and was advised that the price of participating in Kapparot was $27 per chicken. (*Id.* ¶ 8). Based on Steinau's observations, Plaintiff estimates that Defendant kills approximately 300 chickens per year in connection with the Kapparot ceremony. (*Id.* ¶ 7). Plaintiff's proposed injunction would potentially preclude Defendant from accepting donations in association with Kapparot. This would entail a loss of approximately $8,100 per year based on Plaintiff's

estimates.[1]  Based on an annual loss of $8,100, Defendant's compliance with the injunction will exceed $75,000 in ten years.

Defendant argues that Plaintiff's revenue estimates are incorrect and thus asserts a factual attack against the Court's jurisdiction over this matter.  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  With a factual Rule 12(b)(1) attack, a court may look beyond the pleadings to the parties' evidence without converting the motion to dismiss into one for summary judgment.  *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  Here, Defendant mounted a factual attack by submitting the affidavit of Rabbi Tenenbaum and an attached log that purports to show all money received and spent by Chabad of Irvine in connection with Kapparot in 2014.  (Affidavit of Rabbi Tenenbaum, Dkt. No. 90-3, Exhibit B).  Defendant asserts that the log shows that Chabad of Irvine only used 95 chickens and lost $24 in connection with the Kapparot Ceremony in 2014.  (Mot. at 6).  In response to a factual attack, a plaintiff must present "affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted).  As described above, Plaintiff provided the declaration of Ronnie Steinau as well as a verified complaint which is based on Ronnie Steinau's personal observations and which Steinau signed under penalty of perjury.  The Ninth Circuit has held that "[a] verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief.  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) (citing *Lew v. Kona Hosp*., 754 F.2d 1420, 1423 (9th Cir. 1985).  In evaluating the evidence, the Court "need not presume the truthfulness of the plaintiffs' allegations."  *White,* 227 F.3d at 1242.  However, any factual disputes must be resolved in favor of Plaintiffs.  *Edison*, 822 F.3d at 517 (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).  Therefore, for the purposes of determining the amount in controversy, the Court accepts Plaintiff's estimates with regard to the number of chickens used and the price charged in connection with Kapparot.

Defendant also mounts a facial attack on jurisdiction.  Defendant argues that it is impermissible to allow a party to multiply the amount in controversy by another number in order to exceed $75,000.  Defendant cites a Sixth Circuit case, *Freeland v. Liberty Mut. Fire Ins. Co*., 632 F.3d 250, 255 (6th Cir. 2011) in support of their argument.  In *Freeland*, the plaintiffs filed an accident claim against their insurer for exactly $75,000, falling one cent short of the required amount in controversy necessary to confer Federal diversity jurisdiction.  The insurance company requested to multiply Plaintiffs' claims by two based on "the entirely speculative possibility" that Plaintiff might have another similar

---

[1] Plaintiff's estimate is based on 300 chickens being used in Kapparot ceremonies at a cost of $27 per chicken.  $27/chicken multiplied by 300 chickens equals $8,100.00.

accident in the future, and the court declined to do so. *Id*. Here, the Court finds that Defendant continuing to perform Kapparot ceremonies is not an "entirely speculative possibility" analogous to the possibility of future car accident that was presented in *Freeland*. The evidence in the record indicates that Chabad has been conducting Kapparot since 1991, and there is no indication that this ritual will not continue for the foreseeable future. (*See* Declaration of Bryan Pease, Dkt. No 89-2, Exhibit I. at 13-15).

Plaintiff claims that the concept of assessing a party's losses over a period of years to determine whether they meet the $75,000 diversity threshold has ample support in federal jurisprudence. (Oppo. at 7). However, the two cases Plaintiff cites are easily distinguishable from the instant case. In *BanxCorp v. Costco Wholesale Corp.* 978 F.Supp.2d 280, 313–14 (S.D.N.Y. 2013), the court allowed the plaintiff to utilize an estimate of lost revenue over the course of 5 years to meet the threshold for diversity jurisdiction. However, this case didn't involve an injunction and Plaintiff's alleged damages were suffered over the course of a five-year period preceding the filing of the complaint. Conversely, *ISCO Industries, LLC v. Erdle* (E.D.N.C.,2011) 2011 WL 6293788, did involve an injunction and a prospective valuation of losses sufficient to meet the amount in controversy. However, the plaintiff in *ISCO Industries* was allowed to project losses over three years based on the existence of a 3-year non-compete agreement which Plaintiff sought to prevent Defendant from breaching. Neither case is factually similar to the case before the Court.

While both parties' arguments are equally unavailing, the Ninth Circuit holds that it is Defendant's burden to show that the instant case does not meet the amount in controversy requirement. "When a plaintiff files suit in federal court, we use the "legal certainty" test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement." *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015) (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363-64 (9th Cir. 1986)). Under the "legal certainty" test, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 1040 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). The Ninth Circuit has also recognized that:

> [T]he legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Pachinger*, 802 F.2d at 364 (quoting 14A Wright, Miller, & Cooper, Federal Practice & Procedure, Jurisdiction § 3702, at 48-50 (2d ed. 1985)).

The first situation is clearly not present here as there is no contractual relationship between the parties, nor is there any recovery sought. Likewise, this case does not fit the second situation, as the Defendant has not cited any legal authority which precludes consideration of a defendant's future cost of compliance with an injunction as a basis for establishing the amount in controversy. Finally, Defendant provides no independent facts that show the amount in controversy was claimed merely to obtain federal court jurisdiction. Defendant does provide evidence tending to show that the Plaintiff has made several different arguments over the course of this litigation with respect to how Plaintiff's estimates satisfy the amount in controversy. However, the Plaintiff bases all these arguments on the allegations in their original complaint and witness declarations, which assert that the Defendant used approximately 300 chickens in connection with Kapparot in 2014, and charged $27 per chicken. Based on the foregoing, the Court finds that it cannot declare to a legal certainty that Defendant's cost of complying with the injunction will not exceed $75,000, and therefore the Court accepts the amount in controversy claimed by the Plaintiff.

### B. Article III Standing

Defendant also argues that Plaintiff lacks Article III standing. In *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992), the Supreme Court stated that "the irreducible constitutional minimum of standing" consists of three elements: (1) injury in fact; (2) causation; and (3) redressability. *Id.* at 560-61. While *Lujan* addressed standing in the context of an individual plaintiff, the Ninth Circuit applies the same analysis when determining whether an organizational plaintiff has standing. *La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Defendant argues that Plaintiff fails to show that there is injury in fact. (Oppo. at 14.) Defendant states that Plaintiff chose to have an employee expend time trying to stop Defendant from performing Kapparot, and therefore, Plaintiff's injuries are self-inflicted and thus are insufficient to confer federal standing. However, the Ninth Circuit holds that "[a]n organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" *La Asociacion*, 624 F.3d at 1088 (citing *Fair Hous. v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). In its First Amended Complaint, Plaintiff asserts that UPC is dedicated to the respectful treatment of domestic fowl, and its core mission involves running a chicken sanctuary and educating people about abuse of chickens in the food industry. (Comp. ¶ 11). Plaintiff also alleged that in 2014, witnesses observed Defendant's agents roughly handling chickens before slitting their throats during the Kapparot ceremony. (*Id.* ¶¶ 39-40). Defendant also

alleges that prior to being slaughtered, the chickens were crammed into small cages and left in the hot sun for hours with no water. (*Id.* ¶ 38). Plaintiff asserts that they are categorically opposed to the killing and discarding of chickens solely for the performance of a religious ritual. (*Id.* ¶ 11). Plaintiff also alleges that it diverted one of its employees, Ronnie Steinau, from her normal work duties in order to investigate Defendant's conduct and to attempt to convince authorities to take action. (*Id.* ¶ 36). At this stage in the proceedings, the Court must take Plaintiff's allegations as true. Drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiffs can establish that Defendant's acts have frustrated Plaintiff's mission by causing them to divert resources to combat Defendants' allegedly unlawful acts. Therefore, the Court finds that Plaintiffs have established Article III injury-in-fact.

### C. Statutory Standing

The UCL (California Business and Professions Code § 17200), provides civil remedies for unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice." B.P.C. § 17200. The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320, 120 Cal. Rptr. 3d 741, 749, 246 P.3d 877, 883 (2011) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)). The California Legislature intended the UCL to reach "anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West. v. Superior Court*, 2 Cal. 4th 1254, 1266, 10 Cal. Rptr. 2d 538, 546, 833 P.2d 545, 553 (1992) (citing *Barquis v. Merchs. Collection Assn.*, 7 Cal. 3d 94, 109, 101 Cal. Rptr. 745, 756, 496 P.2d 817, 828 (1972)).

Defendant argues that accepting donations in connection with a religious ritual is not a "business act" covered by the UCL. (Mot. at 17). Plaintiff asserts that courts have repeatedly held that non-profit organizations are "businesses" subject to the UCL. (Oppo. at 15). Plaintiff cites *Executive Committee Representing Signing Petitioners of Archdiocese of Western U.S. v. Kaplan*, 2004 WL 6084228, at *5 (C.D.Cal. 2004) in support of this proposition. In *Kaplan*, the court held that the solicitation activities of charities are within the ambit of the UCL. The *Kaplan* court cited *People v. Orange Cty. Charitable Servs.*, 73 Cal. App. 4th 1054, 1075, 87 Cal. Rptr. 2d 253, 268 (1999) for the proposition that the UCL applies to charitable solicitations. However, in *People v. Orange Cty.*, the court actually held that the UCL applies to "commercial fundraisers for charitable purposes", which is defined as "any individual, corporation, or legal entity who **for compensation** solicits funds in California for charitable purposes or, as a result of a solicitation, receives or controls the funds." *Id.* (citing California Government Code §12599, subd. (a)(1) & (2)) (emphasis added). The court in *Kaplan* held that the

defendants abused their positions as church officials to engage in an unlawful scheme to solicit donations for various Church funds. There, the defendants engaged in personal pleas to church members and maintained collection boxes in various churches and retail stores operated by church members. *Id*. Upon receiving the donations, defendants converted the funds for their own personal use. *Id*. While the *Kaplan* courts rationale for considering the defendant church officials to be "commercial fundraisers" is not clear, it is sufficiently clear that the Defendant here is not a "commercial fundraiser." There are no allegations that the Defendant solicited donations for charitable purposes, nor are there allegations that Defendant did so for compensation. Whether the proceeds of Kapparot are donated to charity or not is inapposite, as it is required that a party be compensated for their solicitation in order to qualify as a "commercial fundraiser."

Plaintiff also argues that the UCL has been applied to religious organizations on number of occasions (Oppo. at 15). Plaintiff cites *Pines v. Tomson*, 160 Cal. App. 3d 370, 374, 206 Cal. Rptr. 866, 867 (1984) as support for their argument. In *Pines*, two Jewish businessmen and a Jewish civic organization filed a complaint against the publishers of a "Christian Yellow Pages" ("CYP") which limited advertisements to those placed by Christians. Contrary to UPC's assertion, the *Pines* court did not expressly hold that the UCL applies to a religious organization. Rather, the court held that the UCL applied to the Christian Yellow Pages, notwithstanding the fact that it operated under the aegis of a non-profit religious organization. *Id*. at 383. The court's rationale was that the CYP was a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code §§ 51, 51.5) and therefore the CYP's activities fall within the meaning of a "business practice" as that term is used in the UCL. The *Pines* court cited the California Supreme Court's decision in *Curran v. Mount Diablo Council of the Boy Scouts*, 147 Cal. App. 3d 712, 732-33, 195 Cal. Rptr. 325, 338 (1983), which held that the Unruh Civil Rights Act defines "business establishments" as including "all commercial and noncommercial entities open to and serving the general public." Treating noncommercial entities as businesses in the context of the Unruh Civil Rights Act is consistent with fulfilling the fundamental purposes of that statutory scheme, the protection of civil rights. However, "[t]he UCL's purpose does not require the same broad construction of the word 'business.' 'The UCL's purpose is to protect both consumers and competitors by promoting fair competition in **commercial markets** for goods and services.'" *That v. Alders Maint. Assn.*, 206 Cal. App. 4th 1419, 1427, 142 Cal. Rptr. 3d 458, 464 (2012) (citing *Kasky*, 27 Cal.4th at 949) (emphasis added).

Finally, Plaintiff cites *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244 (9th Cir. 1999) for support of the proposition that the UCL can be applied to a religious organization. In *Maktab*, the Ninth Circuit Court overturned a district court's dismissal of claims for trademark infringement, false designation of origin and supplemental claims that involved the intellectual property of a religious order. The case incidentally involved a UCL claim, however neither the Court's decision nor analysis

addressed the UCL in any respect. The Court cannot find, and Plaintiff does not cite a single case in which the acceptance of a donation in connection with the performance of religious ritual has been treated as a "business act" under the UCL. Moreover, the Court finds that Defendant Chabad of Irvine does not participate nor compete as a business in the commercial market by performing a religious atonement ritual that involves donations. For these reasons, the Court finds that Plaintiff fails to state a claim against Chabad of Irvine for a violation of the Unfair Competition Law (B.P.C. § 17200 *et seq*.)

Plaintiff does not have standing to enforce animal cruelty laws in the absence of a UCL Claim, therefore the Court declines to address the parties' arguments regarding the applicability of California Penal Code 597(a) in the instant case. *See Animal Legal Def. Fund v. Mendes*, 72 Cal. Rptr. 3d 553, 557-58 (2008) (holding that the California legislature did not create a private right of action to directly enforce an animal cruelty statute.) Likewise, the Court declines to address the merits of the parties' arguments regarding the Constitutionality of California Penal Code 597(a).

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Motion to Dismiss Plaintiff's complaint. Because the Court finds that any further amendment would be futile, Plaintiff's claim is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**